2012 CO 10

**In re Amanda VINTON, Esq., Petitioner**

v.

**Sharon VIRZI, Beneficiary; Walter J. Kirkland & Elaine Kirkland Irrevocable Living Trust; and Debra McWilliams, Trustee of the Walter J. Kirkland & Elaine Kirkland Irrevocable Living Trust, and individually, Respondents.**

**No. 11SA77.**

Supreme Court of Colorado, En Banc.

Feb. 13, 2012.

McConnell Fleischner Houghtaling, LLC, Michael T. McConnell, Cecelia Fleischner, Matthew C. Miller, Denver, Colorado, Attorneys for Petitioner.

Kirkland & Seal, LLC, Catherine Anne Seal, Colorado Springs, Colorado, Attorneys for Respondent Sharon Virzi.

Hershey Skinner, LLC, Katrina A. Skinner, Littleton, Colorado, Attorneys for Respondent Debra McWilliams.

No appearance by or on behalf of Walter J. Kirkland & Elaine Kirkland Irrevocable Living Trust.

Justice COATS delivered the Opinion of the Court.

¶ 1 Vinton petitioned for relief pursuant to C.A.R. 21 from orders of the probate court permitting Virzi to amend her challenge to a trust administration by adding a claim of fraud against Vinton, the attorney for the trustee. Over Vinton's objection, the probate court summarily granted Virzi's motion to amend, forcing Vinton to withdraw as counsel for the trustee. The probate court subsequently summarily denied two motions by Vinton to dismiss the claim against her and ordered her to pay Virzi's attorney fees for having to defend against a substantially frivolous and groundless motion. We issued our rule to show cause.

¶ 2 Because Virzi's fraud claim was not plead with sufficient particularity to withstand a motion to dismiss, it was futile, and the probate court abused its discretion in ever permitting the joinder of her opponent's attorney. Similarly, whether or not Vinton's motion to dismiss for lack of subject matter jurisdiction over the separate fraud claim was meritorious, the record is inadequate to support an award of attorney fees. The rule is therefore made absolute, and the matter is remanded to the probate court with directions to dismiss Virzi's claim of fraud against Vinton and vacate its award of attorney fees.

## I.

¶ 3 From the representations of the parties in this proceeding and the pleadings below, the following historical and procedural facts appear to be largely undisputed. Walter and Elaine Kirkland created a trust in 2002, naming themselves as co-trustees and providing for Debra McWilliams to become successor trustee upon their deaths. Mrs. Kirkland survived her husband but died in 2007, causing McWilliams to become successor trustee and to begin administering the trust. Under its terms, McWilliams was to pay the taxes and other expenses of Mrs. Kirkland's estate and distribute three-quarters of the remaining balance to herself as beneficiary and one-quarter to Sharon Virzi, her half-sister and co-beneficiary. The trust's assets included two pieces of real property in California, referred to as the Crater Street and Newhall properties.

¶ 4 Disputes between McWilliams and Virzi over the administration of the trust led McWilliams to retain Amanda Vinton to represent her as counsel and led Virzi, through her attorney, to request an accounting of the trust property. In April 2010, after receiving several accountings, Virzi filed a petition in the probate court, pursuant to section 15–10–501, C.R.S. (2011), to review McWilliams's conduct as trustee. Alleging a breach of fiduciary duty by McWilliams, Virzi asserted that McWilliams had valued the real proper-

ty in the trust below its fair market value in order to lower the overall value of the trust and consequently reduce the share to which Virzi was entitled. Virzi also alleged that McWilliams had committed fraud by providing an inventory of trust assets that falsely designated the California properties as assets of the trust, despite their having earlier been titled in McWilliams's name alone. Virzi contended that by titling the properties in her own name, McWilliams had, in effect, made an unaccounted for distribution of trust property to herself.

¶ 5 Following a deposition of McWilliams, in which she admitted that the properties had been titled in her name since shortly after she became successor trustee in 2007, and in which her responses to certain questions were understood by Virzi to be a concession that her attorney, Vinton, was aware of this titling when Vinton prepared various accountings of trust property, Virzi moved to amend her fraud claim against McWilliams to include Vinton as well. Virzi's specific allegations were that Vinton had on two occasions, in 2008 and 2009, provided Virzi with trust inventories and accountings falsely claiming that the California real properties continued to be owned by the trust; and that in correspondence with Virzi's counsel in February 2010, despite admitting transfer of the Crater property to McWilliams, Vinton continued to commit fraud by claiming that the transfer occurred in 2009 rather than 2007.

¶ 6 Vinton denied knowing that her client had titled the properties in her own name as early as 2007 until McWilliams disclosed as much at her deposition. In any event, however, the correspondence and accountings by Vinton referred to in the amended complaint, which were made part of the record, represent that the properties were not distributed to McWilliams until January 1, 2009, a date prior to which all rents and expenses were clearly attributed to the trust rather than to McWilliams personally.

¶ 7 The probate court permitted the amendment over Vinton's objections, forcing Vinton to withdraw as McWilliams's counsel. Vinton thereafter filed two motions to dismiss, arguing both that the probate court

lacked subject matter jurisdiction over the claim against her and that it failed to state a claim upon which relief could be granted. The probate court summarily denied both motions and awarded attorney's fees in favor of Virzi in the amount of $1,114.50, on the grounds that Vinton's motion to dismiss for lack of subject matter jurisdiction was substantially frivolous and groundless.

¶ 8 Vinton then petitioned for relief pursuant to C.A.R. 21, and we issued our rule to show cause.

## II.

¶ 9 The choice whether to exercise this court's original jurisdiction is entirely within its discretion. *Lazar v. Riggs,* 79 P.3d 105, 106 (Colo.2003); *Coquina Oil Corp. v. Dist. Court,* 623 P.2d 40, 41 (Colo.1981). Exercise of that jurisdiction pursuant to C.A.R. 21 is appropriate to correct an abuse of discretion or excess of jurisdiction by a lower court where appellate review would be inadequate. *People v. Baltazar,* 241 P.3d 941, 942 (Colo.2010); *Lazar,* 79 P.3d at 106. In the past, we have chosen to exercise our original jurisdiction to review an order permitting a party opponent's attorney to be designated a non-party at fault, largely because of its immediate and destructive impact on the attorney-client relationship and the attorney's ability to continue representation in the case. *See Stone v. Satriana,* 41 P.3d 705, 707–08 (Colo.2002). For much the same reasons, we considered it appropriate to stay the proceedings below and immediately review the probate court's orders permitting the amendment of a claim of fraud by joining the defending party's attorney.

## III.

¶ 10 After a responsive pleading has been filed, a party may amend its complaint only by leave of court or written consent of the adverse party. C.R.C.P. 15(a). Although the decision whether to grant or deny leave to amend is a matter within the discretion of the trial court, its discretion is not without limits. *Polk v. Dist. Court,* 849 P.2d 23, 25 (Colo.1993). In making that determination, the court must assess the mo-

tion in the totality of the circumstances, balancing the policy generally favoring the amendment of pleadings against the burden that granting the amendment may impose on other parties. *Id.* at 26. Both this court and the United States Supreme Court have identified the dominant considerations applicable to the resolution of requests for amendatory pleadings, including among them such things as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party by virtue of allowing the amendment, and whether the amendment would be futile in any event. *See Bristol Co. v. Osman,* 190 P.3d 752, 759 (Colo.App.2007); *Benton v. Adams,* 56 P.3d 81, 85–86 (Colo.2002); *Varner v. Dist. Court,* 618 P.2d 1388, 1390 (Colo. 1980) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

¶ 11 While a motion to amend is generally entitled to lenient examination, motions to amend requiring the joinder of other parties involve additional considerations, *see* C.R.C.P. 19 and 20, and the inherent prejudice of any amendment with a potential for adversely affecting the continued representation of an opponent's attorney requires closer scrutiny. In *Stone v. Satriana,* 41 P.3d at 713, we identified strong public policy concerns warranting the careful scrutiny of a legal malpractice defendant's attempt to designate his opposing counsel as a nonparty at fault. As relevant here, we expressed particular concern that allowing a party to bring an opposing party's counsel into a suit in this way is not only destructive of attorney-client confidences but in fact gives the moving party a means of disqualifying his opponent's attorney of choice. *Id.* at 709–10. In addition to the delay inevitably resulting from a substitution of counsel, we took particular note of the profound financial and psychological impact on a litigant that can result from the disqualification of his chosen counsel. *Id.* Elsewhere, we have even required that motions to disqualify an opponent's attorney be viewed with skepticism in light of their potential abuse as dilatory or tactical devices. *See Fognani v. Young,* 115 P.3d 1268, 1272 (Colo.2005); *see also In re Estate of Myers,* 130 P.3d 1023 (Colo.2006).

¶ 12 These same concerns apply with equal, if not greater, force to attempts to amend ongoing litigation by joining an opponent's attorney in allegations of fraud previously leveled against the opponent himself. Because granting such a motion will almost certainly necessitate the withdrawal or disqualification of the opposing party's attorney, its prejudicial impact will necessarily be both substantial and immediate, without regard to the course or outcome of subsequent proceedings. Faced with such a motion, a trial court must therefore carefully scrutinize the totality of the circumstances to determine whether the prejudice necessarily accompanying the removal of an adverse party's attorney amounts to "undue prejudice." While such considerations as the indispensability of the attorney, the financial and psychological impact of his withdrawal on his client, the motives of the movant, and the concomitant delay of proceedings may all be significant in the overall balance, the extent to which a proposed amendment may be futile will often be determinative.

¶ 13 A proposed amendment would clearly be futile if, among other things, it failed to state a legal theory or was incapable of withstanding a motion to dismiss. *Benton,* 56 P.3d at 86–87 (citing 4 James W. Moore et al., *Moore's Federal Practice* ¶ 15.15[3] (3d ed. 1999)). Allowing an amendment that, despite its futility, forces the withdrawal or disqualification of an opponent's attorney would be unjustifiably prejudicial, even if the claim were ultimately dismissed. That being the case, a trial court necessarily abuses its discretion by granting leave to amend a claim of fraud against an opposing party by joining that party's attorney, without first determining that the amendment at least advances a legal theory that can withstand a motion to dismiss.

## IV.

¶ 14 Although the probate court was admittedly without the benefit of our holding today, it is nevertheless the case that it not only granted Virzi's motion to amend without first carefully scrutinizing the totality of the

circumstances, but even after Vinton was forced to withdraw, it denied her own motion to dismiss without a hearing or findings. Remand for further consideration is unnecessary, however, because it is clear on the face of the pleading, taking its factual allegations as true, that it fails to adequately allege a claim of fraud. *See* C.R.C.P. 9(b); C.R.C.P. 12(b)(5).

¶ 15 A plaintiff seeking to prevail on a claim of fraud must establish: (1) that the defendant made a false representation of material fact; (2) that the one making the representation knew that it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff. *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo.2005); *Brody v. Bock*, 897 P.2d 769, 775–76 (Colo.1995); *Concord Realty Co. v. Cont'l Funding Corp.*, 776 P.2d 1114, 1117–18 (Colo.1989); *Kinsey v. Preeson*, 746 P.2d 542, 550 (Colo.1987); *see also* CJI–Civ. 19:1 (CLE ed. 2011). In addition, in part to protect defendants from reputational harm that may result from unsupported allegations of fraud, a charge which involves moral turpitude, *see generally* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1296 (1990), special pleading requirements apply to claims of fraud. *See* C.R.C.P. 9(b). In relevant part, Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

¶ 16 Virzi's theory of fraud, as plead in her amended claim, was that she was damaged by relying on Vinton's assertions that the California properties were owned by the trust, which assertions she knew to be false because she was aware that the deeds to these properties already reflected title in McWilliams. To the extent that Virzi's theory of ownership is legally sound, and a deed titling property actually *is* determinative of beneficial interest in that property, Virzi's allegations of reliance on misrepresentations by Vinton are, as a matter of law, insufficient to prevail on a claim of fraud. On the other hand, to the extent that Virzi's theory is not legally sound, and more than titling property in the name of a trustee is required to establish beneficial interest in the property, Virzi fails to plead with particularity the facts necessary to prevail on a claim of fraud.

¶ 17 With regard to the requirement of reliance, Virzi's claim alleges that she was damaged by reliance on the misrepresentations of Vinton concerning the titles to the subject properties as reflected in their respective deeds, public documents recorded with the clerk and recorder of their respective counties. These official records of title were not only equally accessible to Virzi but were, on their face, publicly recorded in a system specifically designed for the purpose of making accessible to the general public official records of title. It is long-settled law that if a party claiming fraud has access to information that was equally available to both parties and would have led to the true facts, that party has no right to rely on a false representation. *See M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo.1994); *Cherrington v. Woods*, 132 Colo. 500, 290 P.2d 226 (1955); *see also* 1 George F. Palmer, *Law of Restitution*, § 3.19, at 350–51 (1978). A recorded deed of title is precisely that kind of information. *See, e.g., Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 587 (Colo.App.2000).

¶ 18 With regard to Virzi's allegation of misrepresentation of ownership, for hundreds of years it has been true of the English and American law of trusts that "title" is "colorless" because the person in whom the interests are vested may have title, whether he holds them for his own benefit or for the benefit of another. *Restatement (Second) of Trusts* § 2 cmt. d (1959). Not only was it common for a trustee to hold legal title to trust property for the benefit of the trust's beneficiaries, *see* 1 Austin Wakeman Scott et al., *Scott & Ascher on Trusts* § 2.1.6 (5th ed. 2006), but until statutory provisions to the contrary, *e.g.* § 38–30–108.5(1), C.R.S. (2011), a trust was not considered a separate legal entity capable of holding property but merely a description of a relationship between the legal and equitable owners of property. *See Colorado Springs Cablevision, Inc. v. Lively,*

579 F.Supp. 252, 254 (D.Colo.1984). Even if no longer required, for various reasons, including the facilitation of transfers, the terms of a trust commonly, as in this case, expressly authorize trust property to be held in the name of the trustee, without any reference whatsoever to the trust. *See Restatement (Third) of Trusts* § 84 cmt. e (2003); George Gleason Bogert et al., *Trusts and Trustees* § 596 (2d ed. rev. 1980).

¶ 19 We need not determine in this original proceeding, however, whether our statutory authorization in this jurisdiction for property to be held in the name of a trust itself, although clearly permissive on its face, was intended to prohibit trust provisions, like the one in this case, expressly permitting the trustee to hold title to trust property. *Cf.* § 15–1–502, C.R.S. (2011) ("Any fiduciary may register or hold the title to fiduciary property in the name of a nominee."). Quite apart from the historic distinction between title to, and beneficial interest in, trust property; the express authorization in this trust for the trustee to hold title to the trust property; the deeds reflecting, on their face, title in McWilliams as "successor trustee;" and the attached accountings reflecting attribution of all rents and taxes to the trust, despite title in the trustee, it is clear that Virzi's claim against Vinton would be futile for lack of reliance, even if her legal theory regarding title were sound.

### V.

¶ 20 It is also clear that the record before us fails to support the probate court's award of attorney fees, pursuant to section 13–17–102(4), C.R.S. (2011). Contrary to our prior holdings, the probate court granted fees without permitting Vinton an opportunity to respond, without conducting a requested hearing, and without any findings or explanation whatsoever. *See Pedlow v. Stamp*, 776 P.2d 382, 385 (Colo.1989). In addition, although we need not here resolve the merits of Vinton's motion to dismiss for lack of subject-matter jurisdiction, we note that Vinton advanced a rational argument based on statutory authority concerning jurisdiction over fiduciaries, as well as the underlying rationale and authorities from other jurisdictions, if not the ultimate holding, of published Colorado Court of Appeals case law. *See Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo.1984) (finding "a claim or defense is frivolous if the proponent can present no rational argument based on the evidence or law in support of that claim or defense.").

### VI.

¶ 21 The rule is therefore made absolute, and the matter is remanded to the probate court with directions to dismiss Virzi's claim of fraud against Vinton and vacate its award of attorney fees.