**JAMAICA TIME PETROLEUM, INC.,**
Appellant,

v.

**FEDERAL INSURANCE COMPANY,**
Appellee.

No. 8297.

United States Court of Appeals
Tenth Circuit.

Sept. 7, 1966.

Fred M. Winner, Denver, Colo. (Winner, Berge, Martin & Camfield, Denver, Colo., and Brick, Beaty & Bonwell, Wichita, Kan., were with him on the brief), for appellant.

William A. Rundle, Jr., Kansas City, Mo., and Byron Brainerd, Wichita, Kan. (Morrison, Hecker, Cozad & Morrison, Kansas City, Mo., and Weigand, Curfman, Brainerd, Harris & Kaufman, Wichita, Kan., were with them on the brief), for appellee.

Before LEWIS, BREITENSTEIN and HICKEY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellant-plaintiff Jamaica Time Petroleum, Inc., (insured) brought suit to recover $100,000 on an insurance policy written by appellee-defendant Federal Insurance Company (insurer) on an airplane which was destroyed by an explosion and fire. Jurisdiction is based on diversity. The case was tried to a jury which returned a verdict for the insurer and in answering specific interrogatories found that the airplane was intentionally and deliberately destroyed and that such destruction was procured by the president of the insured for the purpose of collecting the insurance.

Insured, a Kansas corporation, was organized to exploit a concession in Jamaica. Ninety percent of its stock is owned by its president, Greenbaum, and his wife. It owned a Lockheed Lodestar airplane.[1] In February, 1962, insured bought from a New Jersey airplane broker a similar Lockheed Lodestar plane together with a supply of spare parts. The total cost for this "package" was $13,500. Greenbaum obtained from the insurer a policy on the plane in the amount of $100,000. About March 10, 1962, a pilot for the insured flew the plane to Wichita, Kansas, and parked it in the general tie-down area of the Wichita Municipal Airport near the terminal building. The plane was next flown on April 10 and the insured's pilot then left it in a remote area of the airport. Greenbaum was advised of the plane's location. On the following night an explosion occurred and the plane was destroyed.

The parties agree that the insurer has the burden of establishing the defense of arson by either direct or circumstantial evidence,[2] and that the insurer must prove deliberate destruction for which the insured was responsible. The insured concedes that the evidence of deliberate destruction is sufficient but attacks the adequacy of the proof to show the responsibility of the insured for that destruction. We must first consider the admissibility of certain evidence.

The testimony of the witness Conn is essential to the insurer's case. When he appeared as a witness at the trial, Conn, a man with a long criminal record, was serving a 30-year term in the Kansas penitentiary under a habitual criminal

---

1. The Lockheed Lodestar is an obsolete aircraft which was manufactured in the early 1940's and for which it is difficult to obtain spare parts.

2. Baltimore American Ins. Co. of New York v. Pecos Mercantile Co., 10 Cir., 122 F.2d 143, 147.

charge. He was approached in the penitentiary by an attorney and an investigator for the insurer who offered him a "reward" of $1,000 "for information leading to the solution of the destruction" of the airplane. Thereafter he talked to the insurance company representatives and $1,000 was paid to his mother. Subsequently, he repeated his statements to Kansas police officers.

Conn testified that one Poulos hired him and two others to destroy the airplane, that Poulos agreed to pay him $1,500 for the job but did not do so, and that the destruction was accomplished by igniting under the airplane explosives contained in a satchel supplied by Poulos.[3] Over the objection of the insured, Conn testified that Poulos told him that he, Poulos, was hired to have the airplane destroyed.[4]

■ The insured says that Conn was not a competent witness. His adjudication as a habitual criminal did not disqualify him.[5] Conn's hope to secure a reduction in sentence and his expressed animosity to Poulos affect only his credibility—not his competence. The remaining ground for attack is the payment of the $1,000 "reward."

■ The rule that a nonexpert cannot enforce a promise to pay compensation for his testimony[6] because of the invitation to perjury which would contravene public policy is not pertinent here. We are not concerned with any dispute over failure to pay. Conn's mother received the $1,000.

■ The offer and payment of the reward were not contingent either on the testimony of Conn in court or on the outcome of any litigation. The information given by Conn related to a past event. This is a civil case. We are not concerned with decisions which deal with contingent fee agreements to produce evidence against particular persons for crimes not yet committed.[7] Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293, is not in point. That was an equity suit for patent infringement in which the plaintiff suppressed evidence of a prior use and the Court held that because of such suppression the plaintiff violated the clean hands doctrine. Here the evidence was presented—not suppressed.

■ The payment of the reward affects the credibility of the witness and the weight to be given his testimony. These factors are not determinative of competence to testify.[8] When the insurer offered and paid the reward it took a calculated risk of securing usable and believable information. The question of the credibility of Conn was for the jury and was submitted to them under instructions which are not here attacked and which we find adequate.

■■ The insured says that Conn's testimony that Poulos told him that he, Poulos, was hired to destroy the airplane was inadmissible hearsay. Rule 43(a), F.R.Civ.P., permits the admission of evidence under the rules of the state in which a trial in a United States court is

---

3. Poulos was tried in state court for conspiracy to commit arson by setting fire to the Lodestar plane, was found guilty, and on appeal the conviction was affirmed. See State v. Poulos, 196 Kan. 253, 411 P.2d 694.

4. An offer by the insurer to adduce testimony from Conn that Poulos told Conn that Greenbaum hired him, Poulos, to destroy the airplane and to pay him $25,-000 for such action was rejected by the district court.

5. See Rosen v. United States, 245 U.S. 467, 471, 38 S.Ct. 148, 62 L.Ed. 406.

Rule 43(a) F.R.Civ.P., makes the federal rule of competency applicable.

6. See Alexander v. Watson, 4 Cir., 128 F. 2d 627, 630.

7. See Williamson v. United States, 5 Cir., 311 F.2d 441, 444. Cf. Hill v. United States, 5 Cir., 328 F.2d 988, cert. denied 379 U.S. 851, 85 S.Ct. 94, 13 L.Ed. 2d 54, and United States v. Crim, 4 Cir., 340 F.2d 989.

8. See Brown v. United States, 9 Cir., 222 F.2d 293, 297.

held. The trial court received the testimony under a 1964 Kansas statute [9] which excepts from the hearsay rule "a statement which the judge finds was at the time of the assertion so far contrary to the declarant's pecuniary or propriatery interest or so far subjected him to civil or criminal liability * * * that a reasonable man in his position would not have made the statement unless he believed it to be true." The statement attributed to the declarant Poulos comes within this provision because it exposed him to both civil and criminal liability. The Kansas Supreme Court has not construed the pertinent provision of the 1964 statute. In such circumstances we accept the decision of the trial court unless clearly convinced to the contrary.[10] Here we are convinced that the district court correctly construed and applied the statute.

■■■■ Speculation and conjecture are not enough to sustain a defense of arson. The insurer must establish by a fair preponderance of the evidence the incendiary origin and the responsibility of the insured therefor.[11] In considering the insured's claim that it was entitled to a directed verdict, we must view the evidence and the reasonable inferences therefrom in the light most favorable to the opposing party.[12]

■■■ At the time of the purchase and destruction of the airplane the insured was in an unhealthy financial position. Its book value net worth was only $5,000 and it owed its president Greenbaum and his wife over $150,000. The insured had no use for the airplane except as a source of parts for its other plane. No effort was made for the substitution of parts and the additional parts secured from the New Jersey broker were not destroyed. Such additional parts were valued at one-half of the $13,500 paid by the insured. The $100,000 insurance on the plane was greatly in excess of its worth.[13] Before the destruction, the insured tried unsuccessfully to sell the plane at a substantial profit. Although the insured presented two experts who testified that the explosion was of gasoline origin it did not offer any explanation of how the explosion occurred. The same two witnesses testified in the state criminal trial of Poulos and were paid by the insured for that court appearance.

The testimony and conduct of insured's president Greenbaum defies explanation. The insurer presented evidence that Greenbaum was seen with Poulos both before and after the explosion. Greenbaum's testimony in regard to such meetings was, at the least, evasive. Greenbaum knew of the removal of the airplane from a frequently used to a remote section of the airport. When informed of the explosion, he responded only by inquiring whether anyone was hurt. The statement of Poulos that he was hired to destroy the airplane was before the jury. Greenbaum did not deny participation or complicity in such destruction.

The record shows deliberate destruction. A motive for incendiarism is established. A connection, perhaps tenuous but none the less present, is shown between the arsonists and the president of the insured. The evidence and the rea-

9. K.S.A. 60–460(j).

10. Dallison v. Sears, Roebuck and Co., 10 Cir., 313 F.2d 343, 347. See also Solomon v. Downtowner of Tulsa, Inc., 10 Cir., 357 F.2d 449, 451.

11. Baltimore American Ins. Co. of New York v. Pecos Mercantile Co., 10 Cir., 122 F.2d 143, 148.

12. Commercial Standard Insurance Company v. Feaster, 10 Cir., 259 F.2d 210, 212.

13. In this regard we recognize that the jury found in favor of the insured in answering the interrogatory relating to fraudulent overstatement of value. The evidence showed that the prior owner of the plane had it insured for $99,300 and that the other Lodestar owned by insured was insured for $125,000. The policy was a "stated amount" type particularly applicable to property in which partial loss would require expensive custom-made parts for restoration.

sonable inferences therefrom are sufficient to sustain the denial of the insured's motion for a directed verdict and to support the verdict of the jury.[14]

Affirmed.

14. See British American Assur. Co. of Toronto, Canada v. Bowen, 10 Cir., 134 F.2d 256, in which a defense of arson based on circumstantial evidence was upheld.