Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 20, 2016

**2016 CO 47**

**No. 13SC722, Murray v. Just In Case Bus. Lighthouse, LLC—Contingent Fees for Witnesses—Summary Witness Testimony—Summary Exhibits.**

The Colorado Supreme Court holds that the violation of an ethical rule does not displace the rules of evidence and that trial courts retain the discretion under CRE 403 to exclude the testimony of improperly compensated witnesses.  Next, the supreme court holds that trial courts may allow summary witness testimony if they determine that the evidence is sufficiently complex and voluminous that a summary witness would assist the trier of fact.  It further holds that in those circumstances, summary witnesses may satisfy CRE 602's personal-knowledge requirement by examining the underlying documentary evidence on which they based their summary testimony.  Finally, the supreme court holds that that under CRE 1006, trial courts abuse their discretion when they admit summary charts that characterize evidence in an argumentative fashion rather than simply organize it in a manner helpful to the trier of fact.

Therefore, the supreme court reverses the court of appeals' holding remanding the case to the trial court, but affirms the court of appeals on all other issues.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2016 CO 47

### Supreme Court Case No. 13SC722
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 12CA1261

### Petitioner/Cross-Respondent:

Patrick Murray,

v.

### Respondent/Cross-Petitioner:

Just In Case Business Lighthouse, LLC, a Colorado limited liability company.

### Judgment Affirmed in Part and Reversed in Part
*en banc*
June 20, 2016

**Attorneys for Petitioner/Cross-Respondent:**
Burleson LLP
Michael M. McGloin
  *Denver, CO*

**Attorneys for Respondent/Cross-Petitioner:**
Cristiano Law, LLC
Francis V. Cristiano
  *Denver, CO*

**Attorneys for Amicus Curiae Colorado Bar Association:**
Burg Simpson Eldredge Hersh & Jardine, P.C.
Diane Vaksdal Smith
  *Englewood, CO*

Holland & Hart, LLP
Marcy G. Glenn
  *Denver, CO*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.

¶1    In this case, we consider the interplay between the rules of evidence and the rules of professional conduct, as well as the breadth of the trial court's discretion in controlling the admission of summary exhibits and testimony.[1]  This lawsuit originated from a business dispute between Respondent/Cross-Petitioner Just In Case Business Lighthouse, LLC ("JIC"), and Petitioner/Cross-Respondent Patrick Murray.  To prepare for the litigation, JIC hired Preston Sumner, a businessman with knowledge of business sales and valuation, as an advisor.  Sumner agreed to help with the case in exchange for a ten percent interest in the case's outcome.  In that role, he created summary exhibits and was identified as a witness for trial.  Murray objected to Sumner's involvement in the case on several grounds: (1) Sumner's testimony should be excluded because his ten percent interest in the case constituted an improper payment in violation of Colorado Rule of Professional Conduct ("RPC") 3.4(b); (2) Sumner lacked the requisite personal knowledge of the case's underlying events as required by Colorado Rule of Evidence ("CRE") 602; and (3) the summary charts were inadmissible under CRE 1006.  The trial court ruled that Sumner could testify as a summary witness, but not as an expert or fact

---

[1] We granted certiorari to review the following issues:

1. [REFRAMED] Whether the court of appeals erred by holding that compensating a fact witness contingent upon the outcome of the case does not require a per se rule excluding that witness's testimony.
2. [REFRAMED] Whether the court of appeals erred by holding that the trial court did not abuse its discretion in allowing a non-expert summary witness to testify about voluminous trial evidence.
3. [REFRAMED] Whether the court of appeals erred by affirming the trial court's admission into evidence of summary exhibits because they were demonstrative devices that contained arguments of counsel.

witness, and it otherwise overruled Murray's objections. Sumner testified and laid the foundation for two summary exhibits, which the trial court admitted into evidence. The jury returned a verdict in favor of JIC, awarding it damages. Murray renewed his arguments on appeal. The court of appeals rejected them in part but remanded the case to the trial court to determine whether Sumner's testimony should have been excluded as a sanction for JIC's violation of RPC 3.4(b). Just in Case Bus. Lighthouse, LLC v. Murray, 2013 COA 112M, ¶¶ 21, 26, 34, 43, __ P.3d __.[2] We granted certiorari, and now affirm in part and reverse in part.

¶2    First, we decline to adopt a per se rule excluding the testimony of improperly compensated witnesses. We hold that the violation of an ethical rule does not displace the rules of evidence and that trial courts retain the discretion under CRE 403 to exclude the testimony of improperly compensated witnesses. In applying that rule, we conclude that the trial court did not abuse its discretion in declining to exclude Sumner's testimony in this case because its probative value was not substantially outweighed by the danger of unfair prejudice. Therefore, we conclude that a remand to the trial court is unnecessary.

¶3    Second, we hold that trial courts may allow summary witness testimony if they determine that the evidence is sufficiently complex and voluminous that a summary witness would assist the trier of fact. We further hold that in those circumstances, summary witnesses may satisfy CRE 602's personal-knowledge requirement by

_____

[2] All citations to Murray in this opinion refer to the paragraph numbers in the Pacific Reporter's version of the opinion.

4

examining the underlying documentary evidence on which they based their summary testimony. Applying this rule to the facts of this case, we conclude that the trial court did not abuse its discretion in permitting Sumner to testify as a non-expert summary witness because the evidence was complex and voluminous and Sumner's testimony helped the jury to understand it, and because Sumner summarized only previously admitted evidence that he had personally examined.

¶4 Third, we hold that that under CRE 1006, trial courts abuse their discretion when they admit summary charts that characterize evidence in an argumentative fashion rather than simply organize it in a manner helpful to the trier of fact. Applying this holding, we conclude that the trial court properly admitted one of Sumner's summary charts, Exhibit 1, because it organized relevant facts chronologically, but abused its discretion in admitting the other, Exhibit 1.1, because it included argument. Nevertheless, we hold that this error was harmless because it did not substantially influence the outcome of the case or impair the fairness of the trial.

¶5 Therefore, we reverse the court of appeals' judgment to the extent that it remanded the case to the trial court to determine whether Sumner's testimony should have been excluded, but affirm on the remaining issues.

## I. Facts and Procedural History

¶6 JIC is wholly owned and operated by Joseph Mahoney. JIC entered into an agreement with Pearl Development Company ("Pearl"), whereby Pearl agreed to pay JIC a specified commission if it successfully "promote[d], solicit[ed], and otherwise

secure[d] the potential sale . . . of Pearl."[3]  Initially, JIC communicated with Epic Energy Resources, Inc. ("Epic"), as a potential buyer, but the parties did not reach a deal at that time.  Subsequently and without JIC's knowledge, Pearl's agents—including its president, Murray—reinitiated talks to sell Pearl to Epic.  Eventually, Pearl's agents signed a letter of intent outlining their plans to sell Pearl to Epic.  Before the sale was completed, Murray contacted Mahoney and convinced him to sign a termination agreement ending their previous business arrangement.  Five months later, Epic completed its purchase of Pearl.  Due to the termination agreement, JIC did not receive the commission it would have received as the exclusive agent authorized to facilitate Pearl's sale.

¶7      Upon learning of the sale, JIC sued Pearl's owners and officers, including Murray, alleging that they fraudulently misrepresented their intentions and failed to disclose that Epic was planning to purchase Pearl, and then used this misrepresentation to induce Mahoney to sign the termination agreement and deprive him of his expected commission.[4]  To help prepare for trial, JIC hired businessman Preston Sumner as an advisor.  As payment, Mahoney granted Sumner a ten-percent interest in the case contingent upon its outcome.  Sumner did a variety of work related to the lawsuit,

---

[3] JIC and Pearl executed two successive agreements, each with a set term, for this same purpose.  The parties entered into the second agreement after the term of the first agreement expired.

[4] JIC ultimately settled with Pearl's two other co-owners.

including analyzing documents and business records and creating summary charts and exhibits based on these underlying documents.

¶8     JIC disclosed Sumner as a witness and indicated its intention to use Sumner as an expert in business valuation pursuant to C.R.C.P. 26(a)(2).  Subsequently, Mahoney revealed during his deposition that he was going to pay Sumner a contingency fee based on the amount Mahoney recovered in the lawsuit.  In response, Murray filed a motion in limine to preclude Sumner from testifying as either an expert witness or a fact witness.  In it, he argued that RPC 3.4(b) prohibited compensating witnesses on a contingency fee basis and, therefore, those witnesses should be prohibited from testifying at trial.  The trial court granted the motion in part and denied it in part.  In granting the motion in part, the trial court found that RPC 3.4(b) only prohibited Sumner from testifying as an expert witness.  In denying the motion in part, the court found that RPC 3.4(b) did not prohibit Sumner from testifying as a non-expert witness and, therefore, allowed him to testify as a lay witness.  The trial court found that the case was complex and the evidence was voluminous, and that Sumner was primarily helping JIC to organize and prepare its case.  The court ordered Sumner to limit his testimony to "presenting evidence that would assist the trier of fact in understanding the transaction" and ordered him not to offer expert opinion testimony.

¶9     At trial, Murray argued that Sumner should be prohibited from testifying under CRE 602 because he lacked personal knowledge of the events that led to the case.  The trial court rejected this argument, stating that summary witnesses are acceptable in complex trials.  However, the trial court ordered that Sumner's exhibits and testimony

7

be based only on evidence that had already been admitted. Thus, Sumner limited his testimony to summarizing previously admitted evidence.

¶10 Murray also objected under CRE 1006 to the admission of two summary exhibits that Sumner created and used while testifying at trial: (1) an eight-page chart summarizing certain documentary evidence with some words in bold-face type (Exhibit 1); and (2) a one-page, color-coded timeline, also containing some bolded words and the headings "Things Mahoney Knew" and "Things Mahoney Did NOT Know" (Exhibit 1.1). Murray argued that the exhibits were inadmissible because the underlying documents were already admitted and were not too voluminous to conveniently examine in court, as CRE 1006 requires. He also argued that the exhibits should not be admitted under CRE 1006 because they were argumentative and prejudicial. The trial court overruled the objection, finding that the case was sufficiently complicated and the underlying documents sufficiently voluminous—over 200 exhibits had been admitted—to satisfy CRE 1006's requirements. Ultimately, the jury awarded $1,691,000 to JIC, which the trial court reduced to $563,610.30 based on the comparative fault of two of Pearl's co-owners.

¶11 Murray appealed, and the court of appeals reversed in part and affirmed in part. Murray, ¶ 74. First, the court of appeals vacated the trial court's judgment that Sumner's payment did not violate RPC 3.4(b); it held that the contingency fee payment did violate RPC 3.4(b) and ordered a limited remand to determine whether excluding Sumner's testimony was an appropriate sanction for the improper fee agreement. Id. at ¶¶ 23, 26. In doing so, the court of appeals declined to adopt a per se rule excluding

8

Sumner's testimony based on his impermissible fee agreement. Id. at ¶¶ 9, 21. Judge Richman dissented from this portion of the opinion, arguing that contingent fee arrangements necessarily undermine the fairness and integrity of the trial and that the court should have vacated the judgment in its entirety and remanded for a new trial. Id. at ¶ 89 (Richman, J., concurring in part and dissenting in part).

¶12 Second, the court of appeals noted that most federal and state appellate courts that have considered summary testimony have held it admissible when "a summary witness has . . . knowledge [of the case] based on an independent review of other evidence." Id. at ¶ 32 (majority opinion). Thus, the court held that Sumner's testimony did not violate CRE 602 because it was based on previously admitted evidence that Sumner had personally examined and it was helpful to the jury. Id. at ¶ 34.

¶13 Third, the court of appeals held that the summary exhibits were admissible despite minor embellishments. Id. at ¶ 42. It held that the trial court did not abuse its discretion when it admitted the summary charts because the evidence was voluminous. Id. at ¶¶ 40–42. It also held that the charts were not "unduly prejudicial" because (1) the underlying documents were admitted as evidence, and (2) summaries or charts need not present both parties' versions of the facts. Id. We granted certiorari.

¶14 We now consider the interplay between the rules of evidence and the rules of professional conduct, and the breadth of the trial court's discretion in controlling the admission of summary exhibits and testimony. First, we examine the relationship between the ethical rules and the evidence rules at trial to determine whether paying witnesses contingent fees in violation of RPC 3.4(b) requires per se exclusion of the

witnesses' testimony. Concluding that it does not, we then consider whether Sumner's fee agreement required the trial court to exclude his testimony in this case. Second, we consider whether non-expert summary witnesses may testify under CRE 602, and whether the trial court abused its discretion in permitting Sumner to testify as a summary witness here. Third, we consider under which circumstances summary charts are admissible as evidence under CRE 1006, and whether the trial court abused its discretion in admitting Sumner's summary charts in this case.

## II. Improper Contingent Fee Witnesses

¶15     Murray first argues that JIC's contingent fee agreement with Sumner violated RPC 3.4(b), and he urges us to adopt a per se rule excluding the testimony of a witness whose compensation hinges on the outcome of a case. The court of appeals agreed with Murray that the fee agreement violated RPC 3.4(b), but did not adopt a per se rule excluding any witness who was paid in violation of the ethical rule. We agree with the court of appeals that the contingent fee agreement does violate RPC 3.4(b),[5] and we affirm its judgment and also decline to adopt a per se rule excluding the testimony of improperly compensated witnesses. We hold that the violation of an ethical rule does not displace the rules of evidence and that trial courts retain the discretion under CRE 403 to exclude the testimony of improperly compensated witnesses. In applying that

---

[5] Like the court of appeals, we express no opinion here on any potential attorney regulation matters that may arise from this case. See Mercantile Adjustment Bureau, L.L.C. v. Flood, 2012 CO 38, ¶ 15, 278 P.3d 348, 354 ("[E]thical violations arising during litigation are better addressed by the 'comprehensive disciplinary machinery' of the bar." (quoting Bd. of Educ. of N.Y. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979))).

10

rule, we conclude that the trial court did not abuse its discretion in declining to exclude Sumner's testimony in this case because its probative value was not substantially outweighed by the danger of unfair prejudice. Therefore, unlike the court of appeals, we conclude that a remand to the trial court is unnecessary.

## A. Standard of Review

¶16    Trial courts have considerable discretion to decide evidentiary issues, so we review such decisions for an abuse of discretion. People v. Segovia, 196 P.3d 1126, 1129 (Colo. 2008). "[A] trial court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. Appellate courts can review ethical violations if they become intertwined with the litigation. See Liebnow ex rel. Liebnow v. Boston Enters. Inc., 2013 CO 8, ¶ 11, 296 P.3d 108, 113. When that happens, we review a trial court's ruling on an ethical violation for an abuse of discretion. See id. at ¶ 14, 296 P.3d at 114 (applying abuse of discretion review to attorney disqualification for violation of RPC 1.7).

## B. Prohibited Contingent Fee Agreements

¶17    RPC 3.4(b) prohibits improperly compensating witnesses for their testimony. Specifically, the rule states, "A lawyer shall not . . . offer an inducement to a witness that is prohibited by law . . . ." Colo. RPC 3.4(b). Comment 3 elaborates on this rule: "[I]t is not improper to pay an expert or non-expert's expenses or to compensate an expert witness on terms permitted by law. It is improper to pay any witness a contingent fee for testifying." Colo. RPC 3.4, cmt. 3. RPC 3.4(b) prohibits lawyers from paying witnesses on a contingent fee basis because those witnesses "may thereby be

11

improperly motivated to enhance [their] compensation and thus lose objectivity." Buckley Powder Co. v. State, 70 P.3d 547, 559 (Colo. App. 2002).

¶18    Even though RPC 3.4(b) unambiguously prohibits paying witnesses contingent fees, it is silent as to the admissibility of an improperly compensated witness's testimony. We begin by emphasizing that "[i]t is both illegal and against public policy to pay or tender something of value to a witness in return for his testimony." People v. Belfor, 591 P.2d 585, 587 (Colo. 1979) (quoting Model Code of Prof'l Responsibility DR7-102 (1979)). But the prohibition on paying witnesses a contingency fee for their testimony does not necessarily mean that those witnesses may never testify at trial. The Colorado Rules of Evidence are separate from the Colorado Rules of Professional Conduct, and each has its distinct purpose: the evidentiary rules govern issues of admissibility at trial, whereas the ethical rules govern attorney behavior. We must consider how these two sets of rules interact during trial.

¶19    We begin by noting CRE 402's general directive that "[a]ll relevant evidence is admissible," unless the United States Constitution, the Colorado Constitution, a state statute, the evidence rules, or the Supreme Court prohibits that evidence. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403. In weighing those dangers and considerations, the proffered evidence "should be given its maximal probative weight and its minimal prejudicial effect." People v. Dist. Ct. of El Paso Cty., 869 P.2d 1281, 1285 (Colo. 1994). Thus, the

12

evidentiary rules strongly favor the admission of relevant, material evidence. Palizzi v. City of Brighton, 228 P.3d 957, 962 (Colo. 2010).

¶20 To give effect to this principle and to the evidence rules' overarching goals, RPC 3.4(b)'s ethical prohibition on contingent fee agreements for witnesses should not be interpreted to require a rule of automatic exclusion. Rather, we must examine the purpose behind the ethical rule to determine whether and how it should be applied during trial. RPC 3.4(b) ultimately aims to protect the integrity of trials by preventing lawyers from improperly inducing witnesses to offer biased testimony. See Liebnow, ¶ 13, 296 P.3d at 113. When a lawyer procures the testimony of an improperly compensated witness at trial, it implicates the witness's potential bias. See Jamaica Time Petroleum, Inc. v. Fed. Ins. Co., 366 F.2d 156, 158 (10th Cir. 1966). But bias is an issue of the credibility and weight to be afforded the witness's testimony rather than the witness's competency. E.g., id.

¶21 And, importantly, a witness's credibility is for the fact-finder to decide, subject to the trial court's discretion. See id. ("The question of the credibility of [the witness] was for the jury."); Burlington N. R.R. Co. v. Hood, 802 P.2d 458, 467 n.3 (Colo. 1990) ("Questions relating to the credibility of a witness and the weight to be accorded the testimony of a witness are matters to be resolved solely by the jury."). Specifically, whether to allow a witness to testify—even one who has been improperly compensated in violation of the ethical rules—is a question within trial courts' sound discretion deriving from their "inherent power to ensure the integrity of the process and fairness to the parties." In re Estate of Myers, 130 P.3d 1023, 1025 (Colo. 2006). Pursuant to that

discretion, trial courts may determine whether and when violations of the ethical rules implicate the fairness of the proceedings and warrant disqualification of a witness. See Liebnow, ¶ 11, 296 P.3d at 113.

¶22    Thus, a witness's potential bias does not automatically render that witness's testimony irrelevant or unhelpful. To the extent that other courts have prohibited contingent fee witnesses from testifying, see, e.g., Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n, 865 F. Supp. 1516, 1526 (S.D. Fla. 1994), those cases do not conflict with our decision. In Golden Door, the district court concluded that a lawyer's improper payments to fact witnesses required exclusion of the evidence that had been tainted by those payments. Id. at 1518, 1525. In doing so, the court explicitly limited its holding to the particular facts of the case: "Under these circumstances and based on the evidence presented in this case, this Court can come to no other conclusion than that [the] repeated payments of substantial sums of money to [the witnesses] had an effect on the testimony they gave in this action." Id. at 1526.

¶23    We read Golden Door and other similar cases as examples of trial courts exercising their discretion based on the facts of the case rather than acting in conformity with or adopting a per se rule.[6] Thus, "[i]n our view, the admissibility of . . . any

---

[6] Other jurisdictions have similarly refrained from adopting per se rules barring contingent-fee testimony. See, e.g., Crowe v. Bolduc, 334 F.3d 124, 132 (1st Cir. 2003) (holding that witnesses' financial incentives were "classic evidence of bias"); Tagatz v. Marquette Univ., 861 F.2d 1040, 1042 (7th Cir. 1988) ("[The ethical] rule against employing expert witnesses on a contingent-fee basis . . . does not [mean] that evidence obtained in violation of the rule is inadmissible. The trier of fact should be able to discount for so obvious a conflict of interest." (citation omitted)); United States v.

14

testimony[] depends ultimately on whether or not it is reliable. If the testimony is reliable and would be helpful to the trier of fact, the witness's testimony should be admitted." People v. Romero, 745 P.2d 1003, 1016 (Colo. 1987). Of course, if the jury finds that the witness is not credible, then it is free to disregard the testimony. But if the trial court finds the evidence so unreliable that its admission would violate CRE 403, then the court retains the discretion to suppress the evidence.

¶24    This approach acknowledges that per se rules risk excluding relevant, unbiased testimony while simultaneously failing to eliminate the possibility of bias entirely. Every compensated witness has the potential to be biased. CRE 403's balancing test accounts for the more nuanced tools that trial courts can use to address the risk that testimony procured in violation of an ethical rule will improperly influence juries. For example, thorough cross-examination and limiting instructions may sufficiently protect the integrity of judicial proceedings by mitigating the impact of witness testimony and exposing potential bias to the jury. We have repeatedly emphasized the importance of these tools. Recently, in Kelly v. Haralampopoulos ex rel. Haralampopoulos, 2014 CO 46, ¶ 48, 327 P.3d 255, 268, we held that "the trial court could have reasonably concluded that cross-examination and argument would address potential prejudice." Similarly, in People v. King, 498 P.2d 1142, 1144–45 (Colo. 1972), we held that parties must be free to cross-examine a witness with an interest in the case to determine

Cervantes-Pacheco, 826 F.2d 310, 315 (5th Cir. 1987) (holding that "it is up to the jury to evaluate the credibility of the compensated witness"); Fund of Funds, Ltd. v. Arthur Andersen & Co., 545 F. Supp. 1314, 1370 (S.D.N.Y. 1982) (holding that payments of large sums to witnesses should be brought before the jury as matters of credibility).

"whether it is of a nature to awaken in him a lively and possible interest in the outcome of the trial" (quoting Tollifson v. People, 112 P. 794, 797 (Colo. 1911)). With these tools, trial courts can promote truth-seeking while maintaining the fairness of the trial. Alternatively, if the trial court determines that these safeguards are insufficient to maintain the fairness of the trial, it can preclude a witness from testifying.

¶25 Accordingly, we conclude that when RPC 3.4(b) and the evidence rules overlap, the proper approach is for trial courts to balance the probative value of the evidence against the danger of unfair prejudice. In so doing, trial courts should not exclude testimony from improperly compensated witnesses unless they determine that the testimony's danger of unfair prejudice substantially outweighs its probative value. See CRE 403; Berger v. Coon, 606 P.2d 68, 70 (Colo. 1980) ("The policy underlying the Colorado Rules of Evidence . . . is . . . to favor admissibility of [adverse witness] testimony so as to ascertain the truth within the bounds of fairness."); see also CRE 601 ("Every person is competent to be a witness except as otherwise provided in these rules, or in any statute of the State of Colorado."); Romero, 745 P.2d at 1015 (noting that per se rules on admissibility are "inconsistent with the general trend of witness competency that every person is competent to be a witness" (quoting State v. Iwakiri, 682 P.2d 571, 577 (Idaho 1984))). We reject a per se rule excluding improperly compensated witness testimony because excluding entire categories of witnesses from testifying neither promotes the discovery of truth nor assures the fairness of the judicial proceedings, and it precludes the trial court from exercising its discretion.

¶26    In sum, a per se rule excluding certain witnesses is contrary to our well-settled trend favoring admissibility of evidence.  Ethical rules, which prohibit lawyers' unethical behavior, generally should defer to the truth-facilitating function of evidentiary rules, which give trial courts discretion to determine what evidence may be presented at trial and the manner in which parties may present it.  Trial courts <u>may</u> exclude the testimony of witnesses compensated in violation of RPC 3.4(b), but they need not always do so.  Therefore, we decline to adopt a per se rule mandating exclusion as a sanction for violating RPC 3.4(b).  Instead, the trial court is best situated to decide on a case-by-case basis whether the testimony of a witness compensated under a contingent fee agreement so prejudices the fairness of the litigation that it requires exclusion of the improperly compensated witness's testimony.

## C.  Application

¶27    Applying this rule to the facts of this case, we determine that the trial court did not abuse its discretion because the danger of unfair prejudice did not substantially outweigh the probative value of Sumner's testimony.  First, the majority of the evidence which Sumner summarized had been previously admitted by stipulation, supporting the accuracy of his testimony.  Second, the trial court found that the testimony helped the jury to make sense of voluminous evidence comprised of complex business records.  Third, the jury was aware of the fee agreement.  Murray specifically brought it to the jury's attention when he cross-examined Sumner on the issue, thus leaving the jury to assess Sumner's credibility for itself.  Finally, because Sumner testified as a lay witness,

17

the trial court prohibited him from giving expert opinions about his analysis of the documentary evidence.

¶28 Therefore, we determine that the trial court did not abuse its discretion in permitting Sumner to testify. It is not necessary to remand this case to the trial court because that court, in its broad discretion, reasonably found that Sumner's fee agreement and testimony did not undermine the fundamental fairness of the trial. Consequently, we reverse the judgment of the court of appeals to the extent that it remanded the case to the trial court.

¶29 We now turn to the question of whether the trial court erred in permitting Sumner to testify as a summary witness under CRE 602.

## III. Non-Expert Summary Witnesses

¶30 Murray contends that CRE 602 prohibits non-expert summary witness testimony, meaning that Sumner's testimony was improper.[7] To address this question, we first consider whether and under what circumstances summary witnesses may testify under CRE 602. Second, we consider whether the trial court abused its discretion in permitting Sumner to testify as a summary witness in this case.

¶31 We hold that trial courts may allow summary witness testimony if, in their discretion, they determine that the evidence is sufficiently complex and voluminous

---

[7] Murray also challenged Sumner's testimony under CRE 701. We agree with the court of appeals that Murray failed to preserve this issue for appeal because he did not object to Sumner's testimony on this basis at trial. See Am. Family Mut. Ins. Co. v. Allen, 102 P.3d 333, 340 n.10 (Colo. 2004). Therefore, we will not consider his CRE 701 argument here.

18

that a summary witness would assist the trier of fact. We further hold that in those circumstances, summary witnesses may satisfy CRE 602's personal-knowledge requirement by examining the underlying documentary evidence on which they based their summary testimony. Applying this rule to the facts of this case, we conclude that the trial court did not abuse its discretion in permitting Sumner to testify as a non-expert summary witness because the evidence was complex and voluminous and Sumner's testimony helped the jury to understand it, and because Sumner summarized only previously admitted evidence that he had personally examined.

## A. Standard of Review

¶32 We review a trial court's decision on evidentiary issues for an abuse of discretion, and a trial court does not abuse its discretion unless its ruling is manifestly arbitrary, unreasonable, or unfair. People v. Stewart, 55 P.3d 107, 122 (Colo. 2002).

## B. CRE 602

¶33 CRE 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." "The threshold for satisfying the personal-knowledge requirement is not very high and may be inferable from sources other than the witness . . . and from the total circumstances surrounding the matter that is the subject of the witness's testimony." Burlington N. R.R., 802 P.2d at 469. Nonetheless, we have not specifically addressed the parameters of non-expert summary witness testimony, including the question of whether such witnesses can satisfy CRE 602's personal-knowledge requirement by

reviewing documentary evidence.[8]  As this is a matter of first impression for us, and as Fed. R. Evid. 602 is substantially identical to CRE 602, federal precedent is helpful to resolve this issue.[9]  See Stewart, 55 P.3d at 123.

¶34     As federal courts have noted, the "dangers posed by summarization of evidence" require certain procedural protections to preserve the fairness of the trial and mitigate the danger that juries will give summary witness testimony undue weight.  United States v. Lemire, 720 F.2d 1327, 1348 (D.C. Cir. 1983).  First, allowing witnesses to summarize evidence presents the danger that juries will treat the summary as "additional evidence or as corroborative of the truth of the underlying testimony."  Id. However, trial courts can protect against these dangers by giving limiting instructions to the jury, giving opposing parties wide latitude to object to all or part of the summary testimony through voir dire of the witness, and giving opposing parties the opportunity to cross-examine the summary witness.  See id.

¶35     Second, permitting summary evidence may allow a party to introduce otherwise inadmissible evidence.  Id. at 1349.  But trial courts can protect against this abuse by requiring that the evidence on which the summary testimony is based be admissible or

---

[8] Non-expert summary witness testimony also implicates CRE 403, which provides that trial courts may exclude evidence if "its probative value is substantially outweighed by . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  See United States v. Lemire, 720 F.2d 1327, 1348 (D.C. Cir. 1983) ("[T]he non-expert summary evidence was cumulative, and hence subject to challenge under Rule 403.").  We do not address the issue of cumulative evidence here because Murray never objected on this ground.

[9] Therefore, we rely on cases interpreting both rules, and refer to them collectively as Rule 602.

admitted at trial. Id. (citing United States v. Johnson, 594 F.2d 1253, 1255 (9th Cir. 1979)).

¶36 Finally, summary evidence may "provide an extra summation for the [proponent] that comes from the witness stand rather than the counsel's lecturn." Id. As the D.C. Circuit noted in Lemire, "The distinction between valid summary testimony and argument is not a bright line." Id.; see also United States v. Armstrong, 619 F.3d 380, 385 (5th Cir. 2005) ("While [summary] witnesses may be appropriate for summarizing voluminous records, . . . rebuttal testimony by an advocate summarizing and organizing the case for the jury constitutes a very different phenomenon, not justified by the Federal Rules of Evidence . . . ."). Hence, trial courts should not permit summary testimony to "draw controversial inferences or pronounced judgment." Lemire, 720 F.2d at 1350. This requirement helps prevent parties from improperly inserting arguments or conclusions into the evidentiary phase of trial when they are better suited to closing argument.

¶37 Recognizing the safeguards attending these concerns, federal courts generally allow non-expert summary witness testimony. See id. at 1347 ("There is an established tradition that permits a summary of evidence to be put before the jury . . . ."). In so doing, many federal courts have held that summary witnesses are only appropriate where the evidence is factually complex. See United States v. Scales, 594 F.2d 558, 563 (6th Cir. 1979). Indeed, "just as an expert can assist a jury by imparting special knowledge that helps the jury to understand technical evidence, a non-expert summary witness can help the jury organize and evaluate evidence which is factually complex

21

and fragmentally revealed . . . throughout the trial." Lemire, 720 F.2d at 1348. Thus, summary witnesses provide valuable services by repackaging relevant evidence that the trier of fact would not adequately understand without assistance. For this reason, trial courts retain the discretion to permit summary witness testimony when it would be helpful to the trier of fact.

¶38 Federal courts have held that summary witnesses' examination of the underlying documents is enough to satisfy the personal-knowledge requirement under Rule 602. See, e.g., In re Furr's Supermarkets, Inc., 373 B.R. 691, 703 (B.A.P. 10th Cir. 2007); Bryant v. Farmers Ins. Exchange, 432 F.3d 1114, 1123 (10th Cir. 2005); Lemire, 720 F.2d at 1347. Thus, federal courts may permit summary witnesses to testify when there is at least some evidence from which the jury "could reasonably find that the witness has personal knowledge of the event to which the witness is about to testify." Burlington N. R.R., 802 P.2d at 469 (citing M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc. Inc., 681 F.2d 930, 932–33 (4th Cir. 1982)). Applying this principle, the Tenth Circuit has stated that after establishing personal knowledge, two factors inform a court's analysis of whether to admit summary testimony and any accompanying summary charts: "(1) the testimony's or chart's potential to 'aid the jury in ascertaining the truth,' and (2) 'the possible prejudice that may result to the [opposing party] in allowing such evidence.'" United States v. Brooks, 736 F.3d 921, 931 (10th Cir. 2013) (quoting United States v. Ray, 370 F.3d 1039, 1046, 1047 (10th Cir. 2004), vacated on other grounds, 543 U.S. 1109 (2005) (alterations and internal citations omitted)).

22

¶39 The D.C. Circuit applied this same approach in Lemire, 720 F.2d at 1349. In Lemire, an FBI agent testified for the government, relying on documents and testimony that had already been admitted to summarize complex evidence about cash flows and offshore companies. Id. at 1346. The district court issued limiting instructions that the summary witness's testimony was "explanatory and was not itself substantive evidence." Id. at 1346–47. On appeal, the D.C. Circuit held that the testimony was admissible because it helped the jury to organize and evaluate complex evidence and was based on previously admitted evidence. Id. at 1346, 1348 (citing Scales, 594 F.2d at 563). Noting that Rule 602's purpose is to ensure reliability in testimony, the D.C. Circuit held that "neither Rule 602's literal language nor its overriding purpose was violated" when the district court admitted the summary testimony. Id. at 1347; see also Furr's, 373 B.R. at 702–04 (holding summary testimony and charts prepared by a debtor's financial accounting manager admissible despite the manager's lack of personal knowledge because "it does not take an expert to create graphs and summarize data," and the testimony was based on examination of previously admitted business records).

¶40 We find this approach persuasive. Ultimately, trial courts are uniquely situated to determine whether summary witness testimony is useful for the finder of fact, whether it is more prejudicial than probative, and whether it is being offered for an improper purpose. Trial court judges act as gatekeepers to ensure the reliability of evidence, including summary testimony. In this role, they determine whether the evidence is sufficiently complex that the jury would need help understanding it, and

they require that summary witnesses satisfy Rule 602's personal knowledge requirement by examining the underlying admitted evidence. Thus, because trial courts have broad discretion to make evidentiary rulings, they may admit non-expert summary witness testimony when it would clarify complex and voluminous evidence. In those circumstances, they may allow summary witnesses to satisfy Rule 602's personal-knowledge requirement by examining the underlying evidence. Having reached this conclusion, we now consider whether the trial court abused its discretion by permitting Sumner to testify as a summary witness under CRE 602 in this case.

## C. Application

¶41    The trial court here did not abuse its discretion in permitting Sumner to testify as a summary witness. The trial court was well within its discretion when it made the threshold finding that the evidence in this case—over 200 exhibits tracking a complicated series of business transactions—was complex and voluminous. The court justifiably concluded that Sumner's testimony would benefit the jury because it could "help the jury organize and evaluate evidence which [was] factually complex." Lemire, 720 F.2d at 1348. The court explicitly found that "this is a complicated enough case that you're going to need some method to demonstrate to the jury how it all comes together[;] otherwise the jury is never going to understand this." Thus, the trial court was justified in finding that summary testimony was appropriate in this case.

¶42    Moreover, the court ensured the reliability of Sumner's testimony by requiring that he only summarize documents and evidence that were already admitted at trial. Even if the summary testimony presented the risk of bias, the court granted Murray

wide latitude during cross-examination to question Sumner on his knowledge of and role in the case. Additionally, the trial court ordered JIC to take it "little by little" to lay the appropriate foundation for Sumner's testimony and prohibit him from offering expert testimony. In so doing, the trial court properly constrained Sumner's testimony to reviewing the documentary evidence, and he did not offer any conclusions or opinions within the purview of an expert. See Stewart, 55 P.3d at 124. Therefore, his testimony did not have the air of authority that might accompany an expert's testimony. For these reasons, the trial court's decision to allow Sumner to testify as a summary witness was not manifestly arbitrary or unreasonable.

¶43 In sum, the trial court did not abuse its discretion in permitting Sumner to testify as a summary witness because his testimony assisted the jury in organizing the facts of the case, and because he had established personal knowledge of the evidence that he summarized by examining the underlying, previously admitted evidence.

¶44 Although we conclude that the trial court did not abuse its discretion in admitting Sumner's summary testimony, the better practice is to issue a limiting instruction in conjunction with the testimony.[10] However, during trial, Murray neither requested nor tendered a limiting instruction under Rule 602.[11] See Am. Family Mut.

---

[10] Since no limiting instruction was tendered in this case, we express no opinion as to the exact language of an appropriate limiting instruction. See Tippett v. Johnson, 742 P.2d 314, 315 (Colo. 1987) ("This court is not empowered to give advisory opinions based on hypothetical fact situations.").

[11] Even absent such a request, the trial court specifically considered giving a limiting instruction and rejected it as unnecessary.

Ins. Co. v. Allen, 102 P.3d 333, 340 n.10 (Colo. 2004) ("Arguments not raised before the trial court may not be raised for the first time on appeal."). Therefore, we see no need to disturb the trial court's decision, since the lack of a limiting instruction did not unfairly prejudice Murray. There was ample evidence in the record from which the jury could have concluded that Murray was liable. Moreover, the most important function of a limiting instruction for summary witness testimony is to prevent the erosion of parties' rights to a fair and impartial jury, which may occur when the proponent is permitted to summarize its case in chief shortly before closing argument and jury deliberation. See Lemire, 720 F.2d at 1347. This case, in which most of the summarized evidence was admitted by stipulation and therefore deemed accurate by both parties, does not present such dangers.

¶45     Having determined that the trial court did not abuse its discretion in permitting Sumner to testify as a summary witness, we now consider Murray's argument that the trial court abused its discretion in admitting Sumner's summary charts under CRE 1006.

## IV. Summary Exhibits

¶46     In his final argument, Murray claims that the trial court erred in admitting Sumner's two summary exhibits into evidence under CRE 1006. Sumner created two summaries of the evidence in the case, including a chart containing bolded words, Exhibit 1, and a timeline containing headings and coloration, Exhibit 1.1. Murray contended at trial that these summaries were demonstrative devices that contained arguments of counsel, and therefore should not be admitted into evidence under CRE 1006. After finding that the evidence in this case was voluminous and complex, the trial

26

court admitted the summaries on the condition that the underlying documents upon which they were based had also been admitted into evidence.

¶47 We hold that under CRE 1006, trial courts abuse their discretion when they admit summary charts that characterize evidence in an argumentative fashion rather than simply organize it in a manner helpful to the trier of fact. Applying this holding, we conclude that the trial court properly admitted one of Sumner's summary charts, Exhibit 1, because it organized relevant facts chronologically, but that it abused its discretion in admitting the other, Exhibit 1.1, because it included argument. Nevertheless, we hold that this error was harmless because it did not substantially influence the outcome of the case or impair the fairness of the trial.

## A. Standard of Review

¶48 Trial courts have broad discretion to make evidentiary rulings. See People v. Eppens, 979 P.2d 14, 22 (Colo. 1999). Specifically, "[t]he admission of summary charts is a matter within the discretion of the [trial] court, whose decisions in such matters will be upheld absent an abuse of discretion." United States v. Bray, 139 F.3d 1104, 1109 (6th Cir. 1998) (quoting United States v. Williams, 952 F.2d 1504, 1519 (6th Cir. 1991)). "A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair." Stewart, 55 P.3d at 122.

## B. CRE 1006

¶49　CRE 1006 governs documentary summaries in the form of charts or outlines.[12] CRE 1006 provides that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." The rule also requires that other parties must have access to examine the original documents at a convenient time and place and provides that the court may order that the originals be produced at trial. CRE 1006.

¶50　Evidentiary summaries are generally admissible at trial under CRE 1006, as long as they meet certain conditions.[13] First, the evidence must be sufficiently voluminous such that in-court examination would be inconvenient. See, e.g., Scales, 594 F.2d at 562. Second, summaries under Rule 1006 must "summarize[] the information contained in the underlying documents accurately, correctly, and in a nonmisleading manner." Bray, 139 F.3d at 1110; see also United States v. Irvin, 682 F.3d 1254, 1262–63 (10th Cir. 2012); cf. United States v. Massey, 89 F.3d 1433, 1441 n.9 (11th Cir. 1996) (noting that a

---

[12] Typically, courts admit summary evidence under either CRE 1006 or CRE 611(a). Here, Murray argued that CRE 611(a) allowed JIC to use the summaries as pedagogical devices, but that CRE 1006 barred JIC from admitting those charts into evidence. The record here suggests that the trial court relied on both CRE 611(a) and CRE 1006, as well as cases interpreting those rules, to admit the summary charts. However, the court of appeals did not address CRE 611(a) in its opinion. Because we hold that Exhibit 1 was admissible under CRE 1006 and Exhibit 1.1 was not admissible, we need not, and therefore do not, address CRE 611(a).

[13] As with CRE 602, cases interpreting Fed. R. Evid. 1006 are useful here because the federal rule is substantially the same as CRE 1006. See Stewart, 55 P.3d at 123. Therefore, we rely on federal cases to interpret the Colorado rule and refer to both rules simply as Rule 1006.

minor inaccuracy in a summary chart did not transform the trial court's decision to allow a party to use the chart into an abuse of discretion because Rule 1006 does not require the fact-finder to accept the information contained in the summaries as true). Third, the underlying documents must be at least admissible, if not admitted. See, e.g., Irvin, 682 F.3d at 1261. This requirement protects against "the subtle introduction of otherwise inadmissible evidence." Lemire, 720 F.2d at 1349.

¶51 Finally, when a summary is admitted in lieu of the underlying documents, the summary must not be "embellished by or annotated with the conclusions of or inferences drawn by the proponent." Bray, 139 F.3d at 1110. This requirement prohibits highlighting, labeling, or otherwise altering the summary if it would render the summary argumentative. Id. However, when the underlying evidence has been admitted, Rule 1006 does not require that either party "include within its charts or summaries its opponent's versions of the facts." United States v. Swanquist, 161 F.3d 1064, 1073 (7th Cir. 1998).

¶52 Thus, the most important considerations in determining whether summary charts are admissible are whether the summaries are sufficiently accurate and nonprejudicial and whether they would be helpful to the jury.

### C. Application

¶53 Applying this reasoning to the instant case, we conclude that the trial court properly admitted one of the summary charts, Exhibit 1, but that it abused its discretion in admitting the other, Exhibit 1.1. As a threshold matter, the record supports the trial court's conclusion that the testimony and exhibits constituted voluminous evidence.

The number of exhibits and the length of the trial are not always determinative of whether summary exhibits are warranted. Rather, it is the case's complexity and the jury's need of an aid to understand the evidence that warrant introducing summary exhibits. The trial court is in the best position to make this determination. As noted above, the trial court found that this case was factually complex and that the evidence was voluminous. It also specifically found that the trial was scheduled to last two weeks and the parties planned to introduce over 200 exhibits into evidence. Thus, its finding that the summaries were helpful to the jury to understand "two weeks['] worth of testimony and a very voluminous number of exhibits" was reasonable.

¶54 We therefore address the issue of whether the summaries used in this case constituted admissible evidence under Rule 1006 or were, as Murray argued, demonstrative devices better suited to closing argument. The trial court correctly found that Exhibit 1—a neutral, chronological compilation of facts containing dates and events that had been pulled from admitted evidence—summarized the evidence without including arguments or conclusions. We will not replace a trial court's well-reasoned judgment with our own. Although Exhibit 1 contained some bolding, this did not render it misleading, inaccurate, or prejudicial. In creating Exhibit 1, Sumner did no more than organize the evidence in a manner helpful to the jury, and he introduced the exhibit for Rule 1006's permissible purpose of aiding the jury in understanding

voluminous evidence. Thus, the trial court acted squarely within its discretion in admitting Exhibit 1.[14]

¶55 Exhibit 1.1, on the other hand, cannot be characterized as neutral because it used the titles "Things Mahoney Knew" and "Things Mahoney Did NOT Know." These titles characterized the evidence in an argumentative fashion, rendering Exhibit 1.1 a demonstrative device that should not have been admitted as evidence.[15] The chart's headings attempted to persuade the jury to assign more weight to certain evidence and reach particular conclusions. Sumner offered Exhibit 1.1 not merely to aid the jury in understanding the events leading up to the case, but to persuade the jury of an ultimate issue—that Mahoney was unaware that Epic was planning to purchase Pearl when he agreed to terminate JIC's and Pearl's agreement. For this reason, the trial court abused its discretion in admitting Exhibit 1.1 as evidence under CRE 1006.

¶56 We conclude, however, that the trial court's error in admitting Exhibit 1.1 as evidence was harmless. "A ruling admitting or excluding evidence is not reversible unless the ruling affects a substantial right of the party against whom the ruling is

---

[14] Murray also contends that the trial court should have sua sponte issued a limiting instruction with Exhibit 1. As with non-expert summary testimony, the better practice would be to issue a limiting instruction with the summary chart. But it is within a trial court's broad discretion under Rule 1006 to determine whether a summary chart's potential prejudice merits a limiting instruction. In this case, we need not reach the issue of whether the failure to give a limiting instruction warrants reversal because Murray neither requested nor tendered one.

[15] The chart may very well have been appropriate as a demonstrative exhibit for use in closing argument. However, here, it was admitted as evidence and the jury was allowed to take it into the jury room during deliberations with no limiting instruction.

made." Stewart, 55 P.3d at 124 (citing CRE 103(a); C.A.R. 35(e)). "[A]n error affects a substantial right only if it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." Laura A. Newman, LLC v. Roberts, 2016 CO 9, ¶ 24, 365 P.3d 972, 978 (quoting Bly v. Story, 241 P.3d 529, 535 (Colo. 2010)) (emphasis omitted).

¶57 The record reveals that the underlying evidence corroborated the facts contained in Exhibit 1.1. The documents underlying the summary charts were all admitted in this case, and for every fact in the chart, Sumner listed the exhibit number of the underlying document from which he pulled the information. In addition, Mahoney testified at trial about what he knew and did not know throughout the termination negotiations, and Murray cross-examined him on these issues. Although the summary chart presented the facts in a light that favored JIC, JIC was not required to incorporate Murray's version of the facts. See Swanquist, 161 F.3d at 1073. Murray had ample opportunity to reveal any bias reflected in the summary charts during cross-examination, and he did so in this case, questioning Sumner about his fee agreement and his relationship with Mahoney. See id.; Massey, 89 F.3d at 1441. The fact that the jury took the summary chart to the jury room during deliberations does not render the trial court's error reversible. Indeed, the jury would likely have been able to see the chart at some point during the trial—although it could not have taken it to the jury room—because JIC could have used it as a demonstrative exhibit during closing argument.

¶58 We also reject Murray's argument that "[t]he importance of the charts . . . cannot be overstated" because JIC's counsel said in closing that they were "the most important

document[s] that you've got." The fact that JIC's counsel referenced the summary charts in closing argument does not lead us to infer that the jury gave them undue weight as compared with the remaining evidence in this case. In fact, JIC's counsel did not limit his closing argument to only those facts contained in the summary charts; he also referenced countless factual details that he drew from a wide range of evidentiary documents. Moreover, Murray's counsel also offered a closing argument, during which he called attention to his own version of the facts and the evidence that most favored Murray's case. We will not presume that the jury gave improper weight to two summary charts in a trial that lasted two weeks with eight witnesses and over 200 documents in evidence. Therefore, the trial court's error in admitting the charts did not affect Murray's right to an impartial jury, nor did it substantially influence the jury's verdict.

¶59 In sum, the trial court properly admitted Exhibit 1, but it abused its discretion in admitting Exhibit 1.1 because it characterized the evidence in an argumentative fashion. Nevertheless, this error was harmless because the summary charts were not unfairly prejudicial and the evidence supported the information they contained.

## V. Conclusion

¶60 In conclusion, we decline to adopt a per se rule excluding the testimony of improperly compensated witnesses. We hold that the violation of an ethical rule does not displace the rules of evidence and that trial courts retain the discretion under CRE 403 to exclude the testimony of improperly compensated witnesses. In applying that rule, we conclude that the trial court did not abuse its discretion in declining to exclude

Sumner's testimony in this case because its probative value was not substantially outweighed by the danger of unfair prejudice.

¶61 We next hold that trial courts may allow summary witness testimony if they determine that the evidence is sufficiently complex and voluminous that a summary witness would assist the trier of fact. We further hold that in those circumstances, summary witnesses may satisfy CRE 602's personal-knowledge requirement by examining the underlying documentary evidence on which they based their testimony. Applying this rule to the facts of this case, we conclude that the trial court did not abuse its discretion in permitting Sumner to testify as a non-expert summary witness because the evidence was complex and voluminous and Sumner's testimony helped the jury to understand it, and because Sumner summarized only previously admitted evidence that he had personally examined.

¶62 Finally, we hold that under CRE 1006, trial courts abuse their discretion when they admit summary charts that characterize evidence in an argumentative fashion rather than simply organize it in a manner helpful to the trier of fact. Applying this holding, we conclude that the trial court properly admitted one of Sumner's summary charts, Exhibit 1, because it organized relevant facts chronologically, but abused its discretion in admitting the other, Exhibit 1.1, because it included argument. Nevertheless, we hold that this error was harmless because it did not substantially influence the outcome of the case or impair the fairness of the trial. Therefore, we conclude that a remand to the trial court is unnecessary.

¶63     Hence, we reverse the court of appeals' judgment to the extent that it remanded the case to the trial court to determine whether Sumner's testimony should have been excluded, but affirm on the remaining issues.